UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 5:25–cv–02530–AB–DTB | Date: | October 3, 2025 |
|---|---|---|---|

| Title: | *Jose Angel Morales Sanchez v. Pam Bondi, et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **[In Chambers] ORDER <u>DENYING</u> PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [Dkt. No. 8]**

Pending before the Court is Petitioner Jose Angel Morales Sanchez's ("Petitioner") *Ex Parte* Application for a Temporary Restraining Order ("TRO," Dkt. No. 8). Petitioner, a noncitizen currently detained in the Adelanto Detention Center, seeks to enjoin Respondents, Pam Bondi, Kristi Noem, James Jenecka, and Todd M. Lyons ("Respondents"), from detaining him unlawfully and removing him to a third country. For the reasons discussed below, the Court **<u>DENIES</u>** Petitioner's TRO Application.

I.   BACKGROUND

Petitioner Jose Angel Morales Sanchez is a 30-year-old citizen of Mexico from Oaxaca. (TRO ¶ 1). From a young age, Petitioner faced extreme emotional, psychological, physical, and sexual abuse due to his sexual orientation. (*Id.* ¶ 6). This abuse was at the hands of his classmates, teachers, neighbors, and even his family. (*Id.*). Due to the ridicule and harassment, Petitioner was forced to comport

his behavior and live unauthentically. (*Id.*). Despite Petitioner's efforts, he still faced sexual abuse, harassment, and was not accepted by his family. (*Id.* ¶ 6–8).

Petitioner arrived in the United States on March 10, 2013, on his 18th birthday, in an effort to escape the persecution he faced in Mexico. (*Id.* ¶ 1). It was not until his arrival in the United States that he openly lived as a gay man. (*Id.* ¶ 9). He applied for asylum in 2015 after retaining counsel, and had his final hearing on June 6, 2018 with the Executive Office of Immigration Review. (*Id.*). Although Petitioner's application for withholding removal was granted, his application for asylum was denied as untimely. (*Id.*). Since being granted relief, Petitioner has complied with all orders of supervision and has maintained a clean criminal record in both the United States and his home country. (*Id.*).

Petitioner was re-detained on or about September 10, 2025, during a routine Immigration and Customs Enforcement ("ICE") check-in. (*Id.* ¶ 2, *Id.* at 2). It is alleged that Petitioner did not receive any documentation stylized as a Notice of Revocation of Release but was given a form I-294 –Warning to Alien Ordered Removed or Deported, signed by a deportation officer, Brian Yim, in Santa Ana, CA. (*Id.*). Petitioner states that this document, however, fails to provide any basis for the revocation of his order of supervision. (*Id.*). Petitioner is currently being held in Adelanto Detention Center. (*Id.*).

On September 26, 2025, Petitioner applied for a TRO to enjoin Respondents from detaining him unlawfully and removing him to a third country. (TRO). On September 28, 2025, Respondents filed their Opposition. (Opp.). On October 1, 2025, Petitioner filed a Reply in Support of the Application for a TRO ("Reply." Dkt. No. 9), and on the same day, Respondents filed an Objection to Petitioner's Reply ("Objection," Dkt. No. 10). According to the Court's Standing Orders, replies are not permitted for *ex parte* or TRO applications unless the Court orders one. Accordingly, the Court will not consider Petitioner's Reply.

## II.    LEGAL STANDARD

### A. Temporary Restraining Order

Fed. R. Civ. P. 65 (b) governs temporary restraining orders. A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters &*

*Auto Truck Drivers Local No. 70 of Alameda City.*, 415 U.S. 423, 439 (1974). The purpose of a preliminary injunction, in turn, is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

The standard for a TRO is similar to the standard for a preliminary injunction. *Frontline Med. Assocs., Inc. v. Coventry Healthcare Workers Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009). To obtain a TRO or a preliminary injunction, the plaintiff must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). Alternatively, where there are merely "serious questions going to the merits," the moving party may still obtain a preliminary injunction where the balance of hardships "tips sharply" in the moving party's favor, and where the moving party also shows a likelihood of irreparable injury and that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Also, a TRO is a kind of ex parte application, so the moving party must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words . . . the moving party [must show why it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995) (explaining that the applicant for ex parte relief must demonstrate urgency and that it is without fault in creating the urgency).

### III.    DISCUSSION

#### A. Likelihood of Success on the Merits

##### 1. Unlawful Detention Claim

Petitioner is not likely to succeed on the merits of his unlawful detention claim. Petitioner challenges ICE's revocation of his release under supervision on multiple grounds. (TRO at 1–2). First, he relies on *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025), arguing that ICE has not shown that the unidentified Supervisory Detention and Deportation Officer ("SDDO") who signed the revocation notice was authorized to revoke supervision. (TRO at 9). Second,

Petitioner contends that the September 17, 2025 Notice of Revocation of Release failed to provide a valid reason for revocation, and therefore did not give him adequate notice of why he was being detained. (*Id*. at 10). Third, he asserts that there has been no communication from any Deportation Officer at the Adelanto Detention Center that could clarify whether proper procedures were followed in revoking his supervision. (*Id.*) Finally, Petitioner points to the absence of any evidence from Department of Homeland Security ("DHS") representatives that he was afforded an interview or given a meaningful explanation for the revocation. (*Id*. at 10–11). Taken together, Petitioner argues that these deficiencies render his detention procedurally defective and unlawful pursuant to *Ceesay* and 8 C.F.R. § 241.13(i)(1)–(2). (*Id*.).

Respondents counter that the statutory framework of the Immigration and Nationality Act ("INA"), rather than any single district court case or regulatory scheme, governs detention and the revocation of supervision. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). (Opp. at 3). Under 8 U.S.C. § 1231(a)(2), detention is mandatory for ninety days following a final removal order, and under § 1231(a)(6), ICE retains discretion to continue detention beyond that period. 8 U.S.C. § 1231(a)(2), 1231(a)(6). Respondents maintain that "the government's authority to re-detain individuals previously released by ICE is discretionary, and it does not require the type of intensive threshold evidentiary procedure that Petitioner suggests." (Opp. at 4).

Courts have held that ICE's discretion includes the authority to revoke supervision and re-detain individuals, provided the detention complies with constitutional limitations. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *Rodriguez v. Hayes*, 578 F.3d 1032, 1044 (9th Cir. 2009), *opinion amended and superseded,* 591 F.3d 1105 (9th Cir. 2010). While the regulations cited by Petitioner, 8 C.F.R. §§ 241.13(i)(1)–(2) and 241.4, establish procedural safeguards—including the requirements that revocation be based on a condition of release violation or on a significant likelihood of removal, and that the noncitizen receive notice and an informal interview—they do not create independent substantive rights that override the statutory grant of detention authority. 8 C.F.R. §§ 241.13(i)(1)–(2), 241.4; *see Zadvydas*, 533 U.S. at 701; *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 1000 (N.D. Cal. 2018) (concluding that agency rules must prescribe substantive law, not merely procedural or policy guidance, to be enforceable). Therefore, as Respondents highlight, "[t]he government is thus broadly authorized to exercise its discretion to revoke such release pursuant to 8 CFR § 241.1(l)(1), and 8 CFR § 241.4(l)(2)." (Opp. at 4).

Accordingly, this Court finds that Petitioner has not demonstrated a likelihood of success on the merits. First, Petitioner's reliance on *Ceesay* is unpersuasive. That decision arose in the Western District of New York and is not controlling authority in this jurisdiction. *Ceesay*, 781 F. Supp. 3d 137. Moreover, assuming arguendo the case were controlling, Petitioner has not produced evidence showing that the SDDO lacked authority to revoke supervision or that ICE's procedures were fundamentally flawed. Even more, the absence of additional details regarding the identity of the SDDO or a formal interview, while potentially imperfect under the regulations, does not negate the statutory authority provided by § 1231(a)(2)–(6). Second, ICE issued a Notice of Revocation of Release on September 17, 2025, stating that enforcement of the removal order and removal to a third country was appropriate. (*See* Opp. Exh. A). While the notice is brief and the informal interview may not have been contemporaneous, the notice identifies the government's determination to pursue removal based on the existing order of removal and the previously granted withholding of removal to Mexico. (*Id*.) Under § 1231(a)(2)–(6), this falls squarely within ICE's statutory discretion to revoke supervision and enforce removal orders. *See* 8 U.S.C. § 1231(a)(2). Third, any other regulatory imperfections, such as delayed notice or minimal explanation, do not strip ICE of its statutory authority.

Therefore, while Petitioner raises procedural concerns tied to regulatory safeguards, the Court finds that ICE's issuance of the Notice of Revocation and ongoing detention falls within the statutory and constitutional framework. Therefore, Petitioner is not likely to succeed on the merits of his unlawful detention claim.

## 2.  Third Country Removal Claim

Petitioner is also not likely to succeed on the merits of his third country removal claim. Petitioner contends that he faces removal to a third country without notice or an opportunity to respond, arguing that such a removal would expose him, as a gay man, to persecution, torture, or death. (TRO at 12). He claims that "ICE has taken the position that it does not need to provide *any notice* to the noncitizen if ICE and the State Department believe a third country's assurances that the noncitizen will not be tortured." (*Id.* at 11). This, Petitioner argues, may allow removal without advance notice if assurances from the receiving country are deemed sufficient. (*Id.*)

The record does not support these contentions. Petitioner has not identified the specific third country for possible removal, nor demonstrated that Respondents

intend to remove him imminently without notice. To the contrary, Respondents highlight that Petitioner's counsel was notified via email on September 24, 2025, that "[t]hird country removal is actively being explored. Once a third country accepts, a notification of third country will be served." (Opp. at 7) (internal quotations omitted). Respondents argue that ICE generally provides advance notice of third country removals, and there is no evidence that the narrow exceptions identified in memoranda—reliance on assurances from the receiving state—apply here. (*Id.*). Even if Respondents' contention is false and they eventually do intend to remove Petitioner to a third country without advance notice, this reality has not yet materialized. Therefore, Petitioner's fear of being removed to a third country without proper notice or opportunity to respond is only speculative and not ripe for adjudication. Accordingly, Petitioner has not shown that he faces a concrete or immediate risk of removal to a third country. Therefore Petitioner has not established a likelihood of success on the merits of this claim.

### B. Likelihood of Irreparable Injury

Petitioner has not established a likelihood of irreparable harm for his unlawful detention claim. It is well known that the deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (internal citation and quotations omitted). However, any due process concern related to unlawful detention is minimal here because ICE provided notice and acted within its statutory authority. *See Zadvydas*, 533 U.S. at 701.

Petitioner also has not established a likelihood of irreparable harm for his third country removal claim. It is clear and self-evident that removal to a country where torture is a possibility constitutes serious and irreparable harm. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 391 (D. Mass. 2025) ("Here, the threatened harm is clear and simple: persecution, torture, and death. It is hard to imagine harm more irreparable."), *stayed pending appeal*, 145 S. Ct. 2153 (2025). However, the Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for prevailing on a TRO: "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Svcs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original) (internal citations omitted); *see also Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*, Case No. C 04-04347 WHA, 2005 WL 1629813, * 6 (N.D. Cal. Jul. 8, 2005) ("Irreparable

harm must not be speculative or merely alleged to be imminent . . . ."). Because there is no confirmation of third country removal here, and no indication Petitioner will not receive notice or an opportunity to respond to such removal, all of Petitioner's arguments are speculative. Thus, he cannot establish a likelihood of irreparable harm on this claim.

### C. Balance of Equities and Public Interest

The balance of equities and the public interest tip in Petitioner's favor. Petitioner faces the risk of removal to a third country where he may be subject to persecution and torture, and he also alleges that his detention was imposed without proper procedural safeguards. (TRO at 1–2). Respondents would suffer only administrative inconvenience if supervision were to continue temporarily. Courts have recognized that there is a strong public interest in preventing removal to countries where individuals may face serious harm. *See Villanueva-Bustillos v. Marin*, 370 F. Supp. 3d 1083, 1090 (C.D. Cal. 2018) ("there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm" (citing *Nken v. Holder*, 556 U.S. 418, 436 (2009))). Here, because Petitioner, as a gay man, may face persecution on account of his sexual orientation if removed to a third country, the public interest supports temporary protection from removal. (TRO at 11–12). To be sure, the public has an interest in the execution of immigration laws, but that interest does not outweigh "an interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken*, 556 U.S. at 436; *see also Ovsepian*, No. 5:25-cv-01937-MEMF-DFM, at *14–15 ("Although there is a countervailing 'public interest in prompt execution of removal orders,' it is well established that 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends[.]'"). Accordingly, this factor weighs in Petitioner's favor.

### IV. CONCLUSION

For the reasons discussed above, Petitioner has not shown a likelihood of success on the merits or a risk of irreparable harm with respect to either his unlawful detention or third country removal claims. While the balance of equities and public interest favor Petitioner, these factors cannot overcome the absence of likelihood of success and irreparable harm. Accordingly, the Court **DENIES** Petitioner's application for a TRO.

**IT IS SO ORDERED**.