UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 5:25–cv–02530–AB–DTB | Date: | December 5, 2025 |
|---|---|---|---|

| Title: | *Jose Angel Morales Sanchez v. Pam Bondi, et al.* |
|---|---|

| Present: The Honorable | ANDRÉ BIROTTE JR., United States District Judge |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER <u>GRANTING</u> PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION [Dkt. No. 18]**

Pending before the Court is Petitioner Jose Angel Morales Sanchez's ("Petitioner") Motion for a Preliminary Injunction ("Motion," Dkt. No. 18). Petitioner, a noncitizen currently detained in the Adelanto Detention Center, seeks to enjoin Respondents from detaining him unlawfully and removing him to a third country. Respondents, Pam Bondi, Kristi Noem, James Jenecka, and Todd M. Lyons (collectively "Respondents"), filed an opposition ("Opp'n," Dkt. No. 19). The Court heard oral argument on December 5, 2025. For the reasons discussed below, the Court **GRANTS** Petitioner's Motion.

I.   BACKGROUND

On September 26, 2025, Petitioner applied for a temporary restraining order ("TRO," Dkt. No. 7) to enjoin Respondents from detaining him unlawfully and removing him to a third country. *See generally* TRO. On September 28, 2025, Respondents filed an opposition to the TRO ("TRO Opp'n," Dkt. No. 8). The Court denied Petitioner's TRO Application on October 3, 2025 ("Order," Dkt. No.

12). Petitioner now moves for a preliminary injunction relying on the same factual record submitted with the TRO Application. *See* Mot. ¶ 15. Respondent filed a brief opposition objecting to the Motion on the basis that the arguments mirror the arguments made in Petitioner's unsuccessful TRO Application. *See* Opp'n. Because no material facts have changed from Petitioner's TRO Application, the Court adopts that prior record and recounts the pertinent facts below:

Petitioner Jose Angel Morales Sanchez is a 30-year-old Mexico national from Oaxaca. TRO ¶¶ 1, 5. From a young age, Petitioner faced extreme emotional, psychological, physical, and sexual abuse due to his sexual orientation. *Id*. ¶ 6. This abuse was at the hands of his classmates, teachers, neighbors, and even his family. *Id*. ¶¶ 6–7. Due to the ridicule and harassment, Petitioner was forced to comport his behavior and live unauthentically. *Id*. Despite Petitioner's efforts, he continued to faced sexual abuse, harassment, and was not accepted by his family. *Id*. ¶¶ 7–9.

Petitioner arrived in the United States on March 10, 2013, on his 18th birthday, in an effort to escape the persecution he faced in Mexico. *Id*. ¶¶ 1, 9. It was not until his arrival in the United States that he openly lived as a gay man. *Id*. ¶ 9. He applied for asylum in 2015 after retaining counsel, and had his final hearing on June 6, 2018 with the Executive Office of Immigration Review. *Id*. ¶ 1. Although Petitioner's application for withholding removal was granted, his application for asylum was denied as untimely. *Id*. Since being granted relief, Petitioner has complied with all orders of supervision and has maintained a clean criminal record in both the United States and his home country. *Id*.

Petitioner was re-detained on or about September 17, 2025,[1] during a routine Immigration and Customs Enforcement ("ICE") check-in. Mot. at 1 ¶ 2; Morales Sanchez Decl. ¶¶ 3–5. It is alleged that Petitioner did not receive any documentation stylized as a Notice of Revocation of Release but was given a form I-294 –Warning to Alien Ordered Removed or Deported, signed by a deportation officer, Brian Yim, in Santa Ana, CA. TRO ¶¶ 2,11. Petitioner states that this document, however, fails to provide any basis for the revocation of his order of supervision. *Id*. ¶ 2.

---

[1] There is a discrepancy regarding the date of Petitioner's redetention as stated in the TRO Application, the Declaration of Petitioner, and the Motion. Because both the Declaration and the Motion indicate that the redetention occurred on September 17, 2025, the Court adopts this date for purposes of the present motion.

Petitioner is being held in Adelanto Detention Center. *Id*. Petitioner has not yet received an interview where he can present evidence as to why he should not be detained. *Id.*; Mot. at 1 ¶ 2.

## II.     LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). Under *Winter*, " 'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Alternatively, " 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 926 (9th Cir. 2003) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).

A preliminary injunction, moreover, may only be awarded "upon a clear showing" of evidence that supports each relevant preliminary injunction factor. *Winter*, 555 U.S. at 22. "This 'clear showing' requires factual support beyond the allegations of the complaint, but the evidence need not strictly comply with the Federal Rules of Evidence." *CI Games S.A. v. Destination Films*, No. 16-CV-05719 SVW (JCx), 2016 WL 9185391, at *11 (C.D. Cal. Oct. 25, 2016) (citing *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

Regarding the second factor, conclusory affidavits are insufficient to demonstrate irreparable harm. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). The plaintiff must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" and "imminent" in the absence of preliminary relief. *Winter*, 555 U.S. at 22; *Am. Trucking*, 559 F.3d at 1052; *Caribbean Marine Servs. Co. v. Baldrige*, 844

F.2d 668, 674 (9th Cir. 1988).

## III.  DISCUSSION

As noted above, the Court previously denied Petitioner's TRO Application. *See* Order. Petitioner now seeks essentially the same relief through the present Motion, but this time provides substantially more developed legal authority and persuasive argument. Respondents, in turn, elected not to address the merits or the newly cited persuasive authority in their Opposition. *See* Opp'n.[2] With the benefit of more complete briefing, the Court concludes that Petitioner has carried his burden on the request for preliminary injunctive relief. Accordingly, the Court **GRANTS** Petitioner's Motion.

### A. Likelihood of Success on the Merits

"The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The plaintiff carries the burden of demonstrating likelihood of success, but is not required to prove their case in full at this stage, but only such portions that enable them to obtain the injunctive relief they seek. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Petitioner has substantially supplemented his prior TRO arguments providing new authority and emphasizing regulatory requirements that were not previously cited. *See* Mot. at 6–19. In particular, Petitioner relies on several district court decisions recognizing that ICE's regulatory obligations under 8 C.F.R. § 241.13(i) are enforceable and binding. *See, e.g.*, *Jane Doe 1 v. Nielsen*, 357 F. Supp. 3d 972, 1000 (N.D. Cal. 2018); *Delkash v. Noem*, 2025 WL 2683988 (C.D. Cal. Aug. 28, 2025); *Esmail v. Noem*, 2025 WL 3030589 (C.D. Cal. Sept. 26, 2025); *Constantinovici v. Bondi*, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025); *Medina v. Noem*, Case No. 25-cv-1768-ABA, ––– F.Supp.3d –––, –––, 2025 WL 2306274, (D. Md. Aug. 11, 2025).

The Court finds *Esmail* and *Delkash* particularly persuasive. *Esmail*, 2025 WL 3030589; *Delkash*, 2025 WL 2683988. Both cases were decided within the

---

[2] Aside from recounting the procedural posture of the case, Respondents' Opposition merely states, "[g]iven that the Petitioner's Motion for Preliminary Injunction largely mirrors his previous TRO motion, Respondents respectfully request that the Court consider their opposition to the TRO as opposition to Petitioner's request for a preliminary injunction." Opp'n at 1.

last four months out of this district on materially similar facts and concluded that ICE must adhere to the procedural safeguards imposed by the regulations. *See Esmail*, 2025 WL 3030589, at *1–4; *Delkash*, 2025 WL 2683988, at *1–3, *4. Petitioner also emphasizes that regulatory obligations, rather than the Immigration and Nationality Act ("INA") alone, govern the procedures for revocation of supervised release and notice to noncitizens. *See* Mot. at 6–7.

These new arguments were not presented as thoroughly in the TRO Application, and Respondents have not meaningfully addressed them. *See* TRO Opp'n. Given the supplementation with new authority directly on point, the Court is persuaded that the regulations constitute binding legal requirements for ICE's revocation process. *See Delkash*, 2025 WL 2683988, at *6 ("The Court is persuaded that the reasoning of these sister courts is correct. These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."). While the Court previously held that statutory authority under the INA predominated, the Court now finds that ICE's compliance with the regulatory framework is a proper and enforceable basis for review. *See Delkash*, 2025 WL 2683988, at *5 ("It is well established that government agencies are required to follow their own regulations.") (citing *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

Accordingly, the applicable statutory and regulatory framework is as follows: ICE's authority to detain, release, and remove noncitizens is governed by 8 U.S.C. § 1231(a); *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Under that statute, the Attorney General is required to effect removal within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1). Once the removal period has expired, and removal is not reasonably foreseeable, continued detention is generally no longer authorized by statute, and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("continued detention is no longer authorized by statute" if removal is not reasonably foreseeable); 8 U.S.C. § 1231(a)(3), (6). Upon release, noncitizens remain subject to supervision under statutory and regulatory conditions, which "include all of the conditions provided in section [1231(a)(3)]," as well as conditions requiring compliance with all laws. 8 C.F.R. §§ 241.5, 241.13(h); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (a noncitizen may be detained beyond the removal period or released under supervision).

The revocation of an Order of Supervision is governed by 8 C.F.R. § 241.13(i). ICE may revoke release if it determines, based on changed circumstances, that there is "a significant likelihood that the [noncitizen] may be

removed in the reasonably foreseeable future." § 241.13(i)(2). Upon such a determination, the noncitizen "will be notified of the reasons for revocation of his or her release" and the Service will conduct "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The noncitizen may submit evidence showing either that removal is not reasonably foreseeable or that they have complied with the conditions of supervision. *Id.* If release is denied following the informal interview, the matter proceeds to the formal "normal review process," which includes evaluation of contested facts and a determination whether continued detention is warranted. § 241.4(l)(3) ("The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked").

Courts do not independently determine whether changed circumstances exist; rather, they review ICE's determination for compliance with the statutory and regulatory framework. *Van Nguyen v. Hyde*, 2025 WL 1725791, at *3 (D. Mass. Jun. 20, 2025) (court does not make an individualized finding of changed circumstances in the first instance); *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) (review limited to whether ICE followed regulatory factors). Relevant factors for ICE's determination include the noncitizen's compliance with the order of supervision, the Service's efforts to effect removal, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding removal. 8 C.F.R. § 241.13(f); *Van Nguyen*, 2025 WL 1725791, at *3.

1. Unlawful Detention Claim

Petitioner raises three arguments as to why his detention is unlawful under the regulatory guidelines. *See* Mot. at 13. The Court addresses each argument.

i. *Authority to Revoke Supervision*

First, Petitioner challenges the authority of the unidentified Supervisory Detention and Deportation Officer (SDDO) who signed the revocation notice. *See* Mot. at 12. He notes that there is no evidence that the officer was properly designated to revoke supervised release, as required by 8 C.F.R. § 241.13(i)(2). *See id.* Although the Court previously did not find *Ceesay v. Kurzdorfer* persuasive and recognizes it is not controlling as a district court decision from another circuit, the Court now finds its reasoning persuasive in light of the supplemental authority provided by Petitioner from this district demonstrating that courts hold ICE to its

regulatory obligations under 8 C.F.R. § 241.13(i)(2). *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025).

In *Ceesay*, the court concluded that a release revocation was unlawful where the official who signed the revocation notice lacked authority under 8 C.F.R. § 241.4(l)(2) (now reflected in ICE's internal delegations) and there was no evidence that the requisite findings were made before revocation. *Id.* at 162. Here, Petitioner similarly challenges the authority of the SDDO who signed his revocation notice. The only documentation in the record is DHS Form I-294, which lists on the first page the signature of the allegedly authorized official and on the second page the names B. Yim and C. Shields. *See* TRO Opp'n Exh. A ("Removal Notice") at 1–2. That form, however, provides no statutory or regulatory basis for the revocation, and there is no evidence that either officer was properly designated under 8 C.F.R. § 241.13(i)(2) to revoke supervised release. *See* Mot. at 14–15. As in *Ceesay*, the absence of proof that the officer was properly designated and that necessary findings were made raises a serious question as to the lawfulness of the revocation. *See* Ceesay, 781 F. Supp. 3d 137, 160–162.[3] The factual and procedural parallels make *Ceesay* instructive and persuasive in demonstrating that Petitioner's detention may be invalid. *See also M.S.L. v. Bostock*, 2025 WL 2430267, at *9–10 (D. Or. Aug. 21, 2025) (finding petitioner's detention unlawful where ICE failed to provide a timely Notice of Revocation signed by an official with authority to revoke release as required under 8 C.F.R. § 241.4(l), in violation of both agency regulations and due process) (citing *Ceesay*, 2025 WL 1284720, at *17).

The Court's prior Order erred in giving Respondents the benefit of the doubt regarding compliance with the relevant regulations. *See* Order. At 3–5. Respondents provided minimal evidence and barely addressed Petitioner's arguments, failing to show that the revocation of supervised release complied with 8 C.F.R. § 241.13(i)(2). *See generally* TRO Opp'n. Petitioner cited well-established authority establishing that government agencies must follow their own regulations, and that failure to do so renders actions unlawful, including *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16,

---

[3] In *Ceesay v. Kurzdorfer*, the court found that the official who signed the release revocation lacked authority under 8 C.F.R. § 241.4(l)(2). *Ceesay*, 781 F. Supp 3d 137 at 162. The government's delegation order only conferred limited powers under Part 241—relating to removal, reinstatement, self-removal, and release from detention—but did not authorize revocation. *Id.* at 160–162. The court also noted that even if the official's title could fall within the regulatory definition of a "district director," there was no evidence the required findings were made before revocation. *Id.* at 162. Without proof of proper designation or requisite findings, the revocation was held unlawful.

2025); *United States ex rel. Accardi*, 347 U.S. at 268; and *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926). *See* Mot. at 15–16. Yet Respondents' TRO Opposition, which Respondents request the Court to consider as their opposition to Peitioner's Motion as well, did not meaningfully confront these new authorities, relying solely on the generalized claim that ICE possesses broad detention authority. *See* TRO Opp'n. They failed to address Petitioner's specific arguments regarding the lack of designation of the officers, the facial deficiencies of the notice, and the absence of required procedural findings. *See id.* at 2. Now that the Court has clarified that ICE must follow its regulatory obligations, Respondents' cursory and unsupported assertions leave them with no substantive defense. Accordingly, the Court finds that Respondents were in violation of 8 C.F.R. § 241.13(i)(3) by revoking release without proper authority. *See Ceesay*, 781 F. Supp 3d 137 at 162; *Rombot v. Souza*, 296 F. Supp. 3d 383, 386–89 (D. Mass. 2017).

### ii.   Insufficient Notice of Revocation

Second, Petitioner contends that the Notice of Revocation of Release issued on September 17, 2025, was insufficient under 8 C.F.R. § 241.13(i)(3) because it failed to provide any meaningful explanation for the revocation. *See* Mot. at 16–17. The only documentation Petitioner received was a generic Form I-294, which did not identify the legal or factual basis for revocation or provide a meaningful opportunity for him to respond. *See id*. at 16–18. Respondents' TRO Opposition acknowledges that Petitioner did not immediately receive the Notice, but merely asserts that ICE would send it and that counsel speculated about deficiencies. *See* TRO Opp'n at 4–5. This minimal response does not satisfy the regulatory requirements or address the specific deficiencies Petitioner identified, and the Court erred in suggesting otherwise. Applying the regulations as written and considering the evidence presented, Petitioner's authority-cited cases provide far more persuasive guidance than the prior TRO Application.

As in the petitioner in *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225–26 (D. Mass. 2025) who received a Notice of Revocation of Release citing changed circumstances, a generic notice stating only that officials "review[ed] [the] file" and determined "there are changed circumstances" fails to comply with the regulation or provide meaningful notice sufficient for due process. *See* Removal Notice at 2; *Perez-Escobar*, 792 F. Supp. 3d at 225. The Notice given to Petitioner here mirrors the deficient language in *Perez-Escobar*, asserting only that ICE determined a "significant likelihood of removal in the near future" without

specifying the changed circumstances or providing any factual support.[4]  Indeed, Respondents' own explanation that ICE is "actively exploring a third country" that might accept Petitioner falls far short of demonstrating that removal is imminent or that the purpose of release has been served, as required under 8 C.F.R. § 241.4(l)(2). *See* Mot. at 17–18; *see also Khamba v. Albarran*, No. 1:25-cv-01227-JLT-SKO, 2025 WL 2959276, at *10 (E.D. Cal. Oct. 17, 2025) (holding that DHS must provide a timely, specific, and meaningful factual explanation to a detainee to satisfy notice and post-deprivation procedural requirements).

Finally, Respondents' Opposition does not address the specific regulatory violations raised by Petitioner, nor does it attempt to justify the lack of a detailed notice or the absence of a prompt opportunity to respond. *See* TRO Opp'n at 3–6. Instead, Respondents rely solely on the generalized proposition that ICE has broad authority to detain, without engaging with the individual deficiencies identified in the Motion. *See id.* Because the Court has now reaffirmed that ICE must follow its own regulations and provide meaningful notice, Respondents' assertions leave them with no substantive defense. The record demonstrates that the Notice of Revocation was facially deficient, procedurally flawed, and legally insufficient to satisfy either 8 C.F.R. § 241.13(i)(3) or basic due process protections. On this basis, the Court finds that Petitioner is entitled to release. *See Rombot*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid ....' " (citation omitted).

### iii.   Failure to Provide Prompt Interview

Finally, Petitioner argues that he was not afforded a prompt informal interview after redetention, in violation of 8 C.F.R. § 241.13(i)(3). *See* Mot. at 18. There is no evidence that any officer conducted the regulatory-mandated interview to allow him to respond to the revocation. *See Delkash*, 2025 WL 2683988, at *5 (government must provide both informal and formal interviews before revocation); *Constantinovici*, 2025 WL 2898985, at *5–6 (failure to conduct interview violates regulations); *Hoac*, 2025 WL 1993771, at *4 (absence of informal interview

---

[4] Both letters to Petitioner and the petitioner in Perez-Escobar state verbatim, "[t]his letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of [ICE]. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case. ICE has determined there is a significant likelihood of removal in the reasonably foreseeable future." *See* Removal Notice at 2; *Perez-Escobar*, 792 F. Supp. 3d at 225.

renders re-detention likely unlawful). ICE also failed to identify any specific changed circumstances, leaving Petitioner unable to meaningfully respond. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349, 369 (S.D.N.Y. 2019).

Petitioner further notes that the only statements regarding a future interview were indefinite and post hoc, providing no real opportunity to challenge the revocation in real time. *See* Mot. at 17. Respondents argue only that the Notice itself was sufficient and that any procedural concerns are immaterial, but this does not address the absence of the required interview or Petitioner's inability to respond. Respondents proffer no evidence that this occurred. *See* TRO Opp'n. The absence of this process demonstrates that Petitioner's detention is likely unlawful.

Accordingly, Petitioner has demonstrated a substantial likelihood of success on the merits of his unlawful detention claim and this factor tips in his favor. On the basis that Respondents committed three regulatory violations, Petitioner is entitled to release.

### 2. Third Country Removal Claim

Petitioner is likely to succeed on the merits of his claim challenging removal to a third country without an adequate measure of due process. As in *Esmail*, the Court evaluates whether ICE's written policies and actual practices present a realistic threat of harm and establish a pattern of conduct likely to recur. *Esmail*, 2025 WL 3030589, at *5. ICE's Noem Memo and related directives permit removal based on diplomatic assurances deemed credible by the State Department, without any requirement that ICE affirmatively inquire whether the individual fears removal or ensure an individualized fear review. *See* Guidance Regarding Third Country Removals, DHS ("Noem Memo") at 1–2. [5] Petitioner argues these procedures require noncitizens to assert rights they may not know exist, fail to consider potential harm from non-state actors, and do not guarantee that USCIS will screen even those who explicitly express fear. *See* Mot. at 19; Noem Memo at 2; 8 C.F.R. § 1208.18(c)(1); *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). Under *Esmail*, such policies create a credible and ongoing risk of removal without due process, establishing both the traceability of the harm and the likelihood that it will recur.

---

[5] U.S. Dep't of Homeland Security, Guidance Regarding Third Country Removals (Mar. 30, 2025), available at https://immigrationlitigation.org/wp-content/uploads/2025/04/43-1-Exh-A-Guidance.pdf.

Here, like in *Esmail*, the risk is not abstract. Petitioner has already received a letter from ICE indicating that he faces potential removal to a third country, demonstrating that the Noem Memo procedures have been applied in practice. *See* Removal Notice; Noem Memo at 1–2. ICE has not asked whether Petitioner fears removal, and there is no guarantee that he will receive a fear screening before removal. *Id.* at 2. These facts show that ICE's policies, combined with their actual application, pose a concrete and imminent risk to Petitioner. Any assurances that he will receive notice or a fear review are discretionary and non-binding. *Id.* Respondents argue that Petitioner has already received assurances that he will not be removed without notice and contend that speculation about potential removal cannot support preliminary relief. *See* TRO Opp'n at 7. But the Noem Memo demonstrates that any such "assurances" are discretionary, do not guarantee notice or a fear review, and cannot eliminate the risk of removal without due process. Noem Memo at 2. These deficiencies satisfy the *Esmail* standard, establishing that Petitioner is likely to succeed on the merits of his claim challenging removal to a third country without adequate notice or a meaningful opportunity to assert a fear-based objection. While the *Esmail* standard is nonbinding, as a case decided just under three months ago out of this district, the Court finds the reasoning and holding persuasive. *See also Nadari v. Bondi*, 2:25-cv-07893-JLS-BFM, *3 (C.D. Cal. Sept. 3, 2025).

Accordingly, Petitioner has demonstrated a substantial likelihood of success on the merits of his claim challenging third country removal without meaningful notice or an opportunity to be heard.

### B. Likelihood of Irreparable Injury

In its prior Order, the Court concluded that Petitioner had not demonstrated a likelihood of irreparable harm for either his unlawful detention claim or his third country removal claim. *See* Order at 6–7. This largely hinged on the Court finding that ICE is not bound by the regulatory framework of 8 C.F.R. § 241.13(i)(2). *See id.* With respect to the detention claim, the Court reasoned that any due process concern was minimal because ICE had provided notice and acted within its statutory authority. *See id.* Similarly, for the third country removal claim, the Court found that Petitioner lacked Article III standing because there was no indication that removal was imminent or that he would be denied notice or an opportunity to respond, rendering his harm speculative. *See id.* Petitioner, however, has since supplemented his arguments with new authorities and evidence demonstrating both an ongoing threat of redetention and systemic deficiencies in ICE's third country removal policy. *See* Mot. Given this, the Court reconsiders its position.

It is well established that the deprivation of constitutional rights "'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the alleged deprivation of a constitutional right is involved, courts recognize that no further showing of irreparable injury is necessary. *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005). The Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention," including substandard medical and mental health care and separation from family. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *Hoac*, 2025 WL 1993771, at *6. Unlawful detention constitutes "extreme or very serious" injury not compensable by money damages. *Hernandez*, 872 F.3d at 999. These principles apply with equal force to Petitioner's third country removal claim, where removal without notice or an opportunity to be heard could result in persecution or torture. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 391 (D. Mass. 2025).

Accordingly, given the Court's determination that Petitioner is likely to succeed on the merits of both claims, and in light of the irreparable harms inherent in the deprivation of constitutional rights and in ICE detention or removal to a third country without due process, this factor weighs in favor of Petitioner for both his unlawful detention and third country removal claims.

### C. Balance of Equities and Public Interest

The Court has already determined that the balance of equities and the public interest tip in Petitioner's favor. *See* Order at 7. In that analysis, the Court recognized that Petitioner faces potential persecution if removed to a third country and that Respondents would suffer only administrative inconvenience from temporary relief. *See id.* Because the factual circumstances relevant to this factor have not changed since the TRO Application, the Court need not conduct a new, full analysis and will adopt its prior conclusions. Accordingly, both the balance of equities and public interest weigh in favor of Petitioner.

Having considered the Motion, including the additional arguments and authorities cited, the Court finds that all *Winter* factors weigh in Petitioner's favor. Petitioner has demonstrated a likelihood of success on the merits and irreparable harm as to his unlawful detention and third country removal claims. The remaining factors—the balance of equities and the public interest—likewise favor relief, as the injunction preserves the status quo and protects fundamental procedural rights

pending final adjudication. Accordingly, the Court departs from its prior ruling on the TRO and **GRANTS** Petitioner's Motion.

### D. Court's Discretion in Waiving Bond

Rule 65(c) provides that a court may require a party seeking injunctive relief to post security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite this mandatory phrasing, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (emphasis in original). A court may dispense with a bond altogether "when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (quoting *Jorgensen*, 320 F.3d at 919). Courts have also waived security where requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996).

Here, Respondents have not identified any monetary harm they would suffer as a result of the injunction, and none is apparent from the record. *See* TRO Opp'n. The relief ordered merely requires Respondents to comply with existing statutory and constitutional procedures before detaining Petitioner or removing him to a third country. Whereas here, Petitioner has demonstrated a likelihood of success on the merits and the injunction safeguards fundamental due process rights, requiring a bond would serve no protective purpose and would risk burdening access to constitutionally grounded relief. *See Couturier*, 572 F.3d at 1086; *Baca*, 936 F. Supp. at 738. Accordingly, the Court **WAIVES** the bond requirement.

### IV. CONCLUSION

For the foregoing reasons, the Motion for a Preliminary Injunction is **GRANTED.** Respondents are ordered to immediately release Petitioner from Respondents' custody. Respondents are enjoined and restrained from redetaining Petitioner unless and until he receives adequate notice and a hearing to determine the legality of his redetention. Respondents are also enjoined from removing Petitioner to a third country without notice and an opportunity to be heard.

**IT IS SO ORDERED**.